UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MEZA, | Case No. CV 15-7291-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## I.

## **INTRODUCTION**

On September 17, 2015, plaintiff Javier Meza filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the

1

Administrative Law Judge ("ALJ") properly considered the opinion of a treating physician at step two and in his residual functional capacity ("RFC") determination. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 4-9; Defendant's Memorandum in Support of the Answer ("D. Mem.") at 4-6.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly failed to consider the treating physician's opined limitations in his RFC determination. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was thirty-nine years old on his alleged disability onset date. AR at 100. Plaintiff has a sixth grade education and past relevant work as a construction worker and preparation cook. *Id*. at 55, 80-81.

On April 20 and 27, 2012, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of October 1, 2011 due to insomnia and mental, head, stomach, arms, legs, and back problems. *Id*. at 86, 100. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 154-58, 162-69.

On January 28, 2014, plaintiff appeared and testified at a hearing before the ALJ. *Id*. at 41-85. The ALJ also heard testimony from Elizabeth Ramos Brown, a vocational expert. *Id*. at 80-84, 205-06. On February 21, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 24-34.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 1, 2011, the alleged disability onset date. *Id*. at 26.

At step two, the ALJ found plaintiff suffered from the following severe impairments: lumbar strain and bilateral knee problems. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 27.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined that he had the RFC to perform light work, with the limitations that he could: stand and walk for four hours total out of an eight-hour work day; sit for four hours total in an eight-hour work day, with a sit/stand option alternating between the two positions at a rate of about once every 20 to 30 minutes; occasionally perform postural activities except never climb ladders, ropes, or scaffolds; lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; and must use a cane for three out of the four hours while standing and walking. *Id*.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work. *Id.* at 33.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform other jobs that exist in significant numbers in the national economy, including nut and bolt assembler, bench assembler, and table worker. *Id*. at 33-34. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Security Act ("SSA"). *Id.* at 34.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.

### **DISCUSSION**

Plaintiff argues the ALJ failed to properly consider the opinion of his treating physician, Dr. Marc Nehorayan. P. Mem. at 4-9. Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting Dr. Nehorayan's opinion that plaintiff will have up to a fifteen percent limitation in performing activities within a given schedule, maintaining regular attendance and being punctual within customary tolerances, and in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* Plaintiff further contends that even if these limitations were not severe, the ALJ was required, but failed, to consider these limitations in his RFC determination. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1       Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### **Treating and Examining Physicians Regarding Mental Health**

      Dr. Marc Nehorayan, a psychiatrist, treated plaintiff from May 31, 2012 through at least January 29, 2014 in connection with a worker's compensation case.[2] *See* AR at 404-16, 818-23, 1111-36, 1172-74. At the initial evaluation, Dr. Nehorayan observed plaintiff had a grimacing expression, was slightly anxious, was tired, and was oriented. *See id.* at 409-10. Dr. Nehorayan administered several psychological tests, the scores of which indicated plaintiff experienced severe depression, mild anxiety, and hopelessness. *Id.* at 411. Based on the initial evaluation, tests, history, and medical records, Dr. Nehorayan's diagnostic impression was plaintiff suffered from adjustment disorder with anxious mood,

---

[2] In September 2012, plaintiff reported to Dr. Michael S. Cohn that he was seeing a psychiatrist every three weeks and a psychologist every two weeks. AR at 441. In contrast, in September 2013, plaintiff told Dr. Nehorayan he had never been treated by a mental health professional. *Id.* at 1120. The record contains no treatment notes from any mental health provider other than Dr. Nehorayan. *See id.* at 404-16, 818-23, 1111-36, 1172-74.

sleep disorder due to a general medical or orthopedic condition, orthopedic injuries, occupational injury, and physical dysfunction, and he assessed a global assessment of functioning ("GAF") score of 62.[3] *Id.* at 412. Dr. Nehorayan did not believe plaintiff was actually suffering from a clinical depressive episode at that time, and opined the "real issue" was the orthopedic issue and plaintiff's psychological distress would improve if the physician could alleviate plaintiff's pain. *See id.* at 412, 414.

Plaintiff's subsequent examinations yielded few and mild findings. Initially, Dr. Nehorayan observed plaintiff's emotional symptoms seemed to have worsened and prescribed an anti-depressant. *Id.* at 818-19. But later, Dr. Nehorayan observed plaintiff had a constricted affect and was less irritable. *See id.* 822, 1127, 1130, 1136, 1173.

On September 26, 2013, Dr. Nehorayan submitted a follow-up evaluation. *Id.* at 1111-25. In the evaluation, Dr. Nehorayan noted plaintiff was sleeping four to five hours with Ambien, which helped reduce his irritability. *Id.* at 1113-14. During the mental status examination, Dr. Nehorayan observed plaintiff was slightly grimacing, had a normal affect, appeared slightly anxious, could not spell "lunes" backward correctly due to his distractibility, was oriented, and had an intact memory. *Id.* at 1115. The results from the psychological tests indicated a slight amount of depression, anxiety, and hopelessness. *Id.* at 1116. Dr. Nehorayan's diagnostic impression was the same as during the initial evaluation, except for a slightly higher GAF score of 64. *Id.* at 1117. Dr. Nehorayan opined

---

[3] A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000) ("DSM").

that plaintiff's cognitive difficulties had nothing to do with his emotional state, but rather his difficulties with focusing and concentrating resulted from his pain. *Id*. at 1114. Relying on the levels of mental impairment identified by the AMA Guides to the Evaluation of Permanent Impairment ("AMA Guides"), Dr. Nehorayan opined plaintiff had mild limitations with regard to: most areas of social functioning; memory, concentration, persistence, and pace; and deterioration or decompensation in worklife settings. *Id*. at 1119-20. Dr. Nehorayan also found plaintiff's GAF score of 64 translated to a nine percent whole person impairment and plaintiff should have an additional three percent impairment associated with pain. *Id*. at 1122-23.

Dr. Michael S. Cohn, a consultative psychologist, examined plaintiff on September 7, 2012. *Id*. at 440-48. Dr. Cohn observed plaintiff, among other things, was focused during the examination, had no difficulty making decisions, was coherent, and had a normal affect. *Id*. at 442-43. Dr. Cohn opined plaintiff had no mental limitations and assessed a GAF score of 75.[4] *Id*. at 447-48.

### The ALJ's Findings at Step Two

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

Here, the ALJ concluded plaintiff did not suffer from a severe mental impairment. AR at 26. In reaching that decision, the ALJ relied on the opinions of Dr. Nehorayan and Dr. Cohn. The ALJ noted Dr. Nehorayan assessed plaintiff with a GAF score of 62, which only indicated mild limitations, and Dr. Cohn

---

[4] A GAF score of 71-80 means "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." DSM.

8

assessed plaintiff with a GAF score of 75. *Id*. The ALJ also noted Dr. Cohn did not diagnose plaintiff with any mental disorder and the records contained no evidence of continuous mental health treatment, psychiatric hospitalization, or inpatient mental treatment. *Id.*

Contrary to plaintiff's contention (*see* P. Mem. at 6), the ALJ did not reject Dr. Nehorayan's opinion at step two. Mental impairments are generally considered non-severe if the degree of limitation in three of the four functional areas are rated as "none" or "mild." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Dr. Nehorayan opined plaintiff would only have mild mental limitations.

Plaintiff intimates Dr. Nehorayan actually opined greater than mild limitations, arguing Dr. Nehorayan opined plaintiff "will have up to a fifteen percent limitation" in performing within a schedule, attending work regularly, being punctual, and working without interruptions. P. Mem. at 5-6. But plaintiff's argument is misleading. Dr. Nehorayan never stated that plaintiff would have up to a fifteen percent impairment. Rather, Dr. Nehorayan simply opined plaintiff had an overall mild impairment. AR at 1119-20. Pursuant to the AMA Guides, a mild impairment can range from a one percent to fifteen percent impairment. *Id*. at 1119. Thus, Dr. Nehorayan's opinion may be interpreted as falling anywhere in that range, including a one percent impairment. Further, Dr. Nehorayan's opinion uses worker's compensation terminology and guidelines, which do not necessarily apply in the social security context.[5] *See Booth v. Barnhart,* 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002).

As such, the ALJ's step two determination that plaintiff did not suffer a severe mental impairment was not a rejection of Dr. Nehorayan's opinion.

---

[5] Similarly, Dr. Nehorayan's conclusion that plaintiff's GAF score of 64 translated to a nine percent whole person impairment uses worker's compensation terminology, which does not apply in the social security context. *See* AR at 1121-22.

**The ALJ's RFC Determination**

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). Thus, the ALJ was obligated to consider plaintiff's mental limitations, notwithstanding the ALJ's finding that they were non-severe impairments. *See* Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ's RFC determination includes only physical limitations. AR at 27. And in discussing his RFC determination, the ALJ mentions only plaintiff's physical limitations, and offers no consideration of any mental limitations. *See id.* at 27-33. If the ALJ rejected Dr. Nehorayan's findings of mild mental limitations, he was required to say so and provide specific and legitimate reasons supported by substantial evidence for the rejection. *See Lester*, 81 F.3d at 830. The ALJ gave no such reasons here. On the contrary, in his step two analysis the ALJ indicated he accepted Dr. Nehorayan's opinion. *See* AR at 26.

Consequently, although the ALJ properly found plaintiff did not have a severe mental impairment at step two, he erred in his RFC determination because he was still required to consider the mental limitations opined by Dr. Nehorayan, which in this case included mild limitations with regard to memory, concentration, persistence, and pace. *See id.* at 1119-20. Arguably, in reaching his RFC determination, the ALJ could have relied on Dr. Nehorayan's opinion that plaintiff's real issue was orthopedic and, once that was resolved, plaintiff would not suffer from cognitive limitations. *See id.* at 412, 414, 1114. But if that was the

ALJ's reasoning, he was required to articulate it. The ALJ's failure to even acknowledge the opined limitations anywhere in his RFC discussion suggests he simply ignored Dr. Nehorayan's opinion without reason.

The ALJ may ultimately conclude that the opined mental limitations do not need to be included in plaintiff's RFC, but his failure to even consider the mental limitations in his RFC determination was error. Nor was it plainly a harmless error, given the absence of clear testimony from the vocational expert as to the effect such mild mental limitations would have on plaintiff's ability to work. *See id.* at 82-84. As such, the ALJ erred in his RFC determination.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for

further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ erred in his RFC determination, and it is unclear what plaintiff's RFC would be if the ALJ properly considered Dr. Nehorayan's opinion, or what effect a change in RFC would have on the disability determination. On remand, the ALJ shall consider the mental limitations opined by Dr. Nehorayan and reassess plaintiff's RFC. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## **RECOMMENDATION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: December 29, 2016

SHERI PYM
United States Magistrate Judge